\*\* E-filed May 4, 2010 \*\*

NOT FOR CITATION

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| DOROTHY LANAGAN, | No. C09-01835 HRL |
| Plaintiff,<br>v. | **ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |
| SANTA CRUZ COUNTY METRO TRANSIT DISTRICT, | [Re: Docket No. 34] |
| Defendant. | |

Pro se plaintiff Dorothy Lanagan sued her former employer, Santa Cruz Metropolitan Transit District ("Metro"), alleging that her supervisors harassed and intimidated her during four failed driving tests in 2006. She also claims that Metro unfairly terminated her employment shortly after it re-hired her in 2007. Defendant now moves for summary judgment. Lanagan opposes defendant's motion.[1] Upon consideration of the motion papers and the arguments presented at the hearing, the court GRANTS defendant's motion.[2]

///

///

---

[1] Lanagan filed her handwritten, unsworn opposition to defendant's motion more than two weeks late (and not until chambers' staff contacted her about it). The court notes that this is not the first time Lanagan has missed deadlines. (*See* Order, Mar. 23, 2010, Docket No. 34.) Nevertheless, as this is a dispositive motion, the court will give full consideration to Lanagan's belated opposition.

[2] Pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73, all parties have expressly consented that all proceedings in this matter may be heard and finally adjudicated by the undersigned.

**LEGAL STANDARD**

A court may grant a motion for summary judgment when the pleadings and discovery material on file show no genuine issue of any material fact. Fed. R. Civ. P. 56(c). Material facts include those that could affect the outcome of the litigation, as identified by the substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When deciding a motion for summary judgment, the court views the facts in the light most favorable to the nonmoving party. *Leisek v. Brightwood Corp.*, 278 F.3d 895, 898 (9th Cir. 2002).

The moving party has the initial burden of demonstrating "the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party does not meet its initial burden, then "the nonmoving party has no obligation to produce anything" and the court must deny summary judgment. *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102–03 (9th Cir. 2000). But if the moving party does meet its initial burden, then the nonmoving party must "produce enough evidence to create a genuine issue of material fact" to defeat the motion. *Id.* at 1103. In so doing, the nonmoving party cannot simply rely on his pleadings, but must instead put forth enough evidence about disputed material facts that a reasonable jury could find in favor of the nonmoving party. Fed. R. Civ. P. 56(e)(2); *Anderson*, 477 U.S. at 252. But there is no genuine dispute where the only evidence a party presents is "uncorroborated and self-serving testimony." *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002) (internal quotations omitted).

**BACKGROUND**

**A.    First Period of Employment**

Lanagan first began working as a driver for Metro's paratransit service in October 2004. (Warnock Decl. Ex. A.) In 2006, pursuant to an agreement between Metro and the United Transportation Union Local 23, all paratransit drivers were required to upgrade their commercial driver licenses. (Aguirre Decl. ¶ 5.) Metro provided the driving tests through the Department of Motor Vehicle's Employer Testing Program. (*Id.*)

Lanagan tried, and failed, the commercial upgrade examination three times between July 28, 2006 and August 8, 2006. Her failures were due to what her examiners deemed "critical driving

errors."[3] (Aguirre Decl. ¶¶ 7–8; Warnock Decl. Exs. G–I.) Following these failures, Metro placed Lanagan on administrative leave and informed her that it intended to terminate her employment. (Warnock Decl. Ex. J.)

Nevertheless, Lanagan's union negotiated with Metro to allow her one more chance to take the exam. As part of this agreement, Lanagan submitted a letter of resignation that Metro would accept if she failed the exam yet again. (Warnock Decl. Exs. E, M.) Lanagan failed the fourth driving test on September 26, 2006, and Metro accepted her letter of resignation that same day. (Aguirre Decl. ¶¶ 9–11; Warnock Decl. Exs. L, N.)

**B.     Second Period of Employment**

After her resignation, Lanagan accepted a job as a driver with another company. During that time, she obtained her commercial license upgrade directly from the Department of Motor Vehicles. She then applied to return to Metro. (Aguirre Decl. ¶¶ 12–13.) Metro re-hired her as a probationary employee beginning on September 24, 2007.[4] (Warnock Decl. Ex. O.)

Shortly after Lanagan started working again for Metro, she was involved in two accidents. First, a passenger fell and hit her head as she walked down a ramp from Lanagan's parked vehicle to a wheelchair. Metro determined that the fall occurred because Lanagan had improperly positioned the vehicle. (Aguirre Decl. ¶ 14; Warnock Decl. Exs. R–S.) Two days later, Lanagan drove the wrong way through a marked exit gate, flattening several of her vehicle's tires on a tire control spike barrier. (Aguirre Decl. ¶ 15; Warnock Decl. Exs. T–U.) Ciro Aguirre, Metro's Manager of Operations, reviewed the supervisor reports of these incidents and determined that Lanagan "had exercised poor judgment" and "exhibited poor driving skills that represented significant safety risks." (Aguirre Decl. ¶¶ 16–17.) As a result, he concluded that Lanagan was a "severe liability" and terminated her employment on November 30, 2007. (Aguirre Decl. ¶ 17; Warnock Decl. Ex. Q.)

///

---

[3] Lanagan's complaint and opposition to this motion describe these tests in detail; she denies that she made the reported errors (or, that the errors were not her fault).

[4] Metro required an approximately six-month probationary period for all new employees. (Mot. 4:8–12; Warnock Decl. Ex. P § 26.)

3

### C. Procedural History

On April 24, 2008, Lanagan filed an employment discrimination complaint with the Equal Employment Opportunity Commission ("EEOC"). She alleged that Metro had discriminated against her based on her sex and also charged Metro with retaliation. Her EEOC complaint refers to both her 2006 driving tests and her 2007 accidents. (Warnock Decl. Ex. V, at 4–5.)

The California Department of Fair Employment and Housing ("DFEH") notified Lanagan in writing on April 28, 2008 that the EEOC had referred her complaint to the DFEH. Nevertheless, the DFEH said that the EEOC would process her complaint. It advised Lanagan that its letter also constituted a right-to-sue notice, and that she had one year to file a civil action under the California Fair Employment and Housing Act ("FEHA"). It further advised that this one-year period would be tolled while the EEOC investigated her claim. (Warnock Decl. Ex. V, at 1.)

On June 3, 2008, the EEOC mailed Lanagan a right-to-sue letter by certified mail. The EEOC informed Lanagan that she had ninety days to file a civil action under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq*. The letter noted that although Lanagan could ask the court for help in finding an attorney to represent her, that any such request would "not relieve [her] of the obligation to file suit within this 90-day period." (Warnock Decl. Ex. W.)

Lanagan filed her original three-page complaint on April 28, 2009. (Docket No. 1.) Nine months later, she moved to amend her complaint to add more details. (Docket No. 26.) Metro then moved to dismiss her complaint for failure to prosecute, asserting that Lanagan had failed to (1) provide her initial disclosures, (2) participate in the preparation for the Initial Case Management Conference, and (3) appear for several court dates. (Docket No. 28.) After hearing both motions, this court granted Lanagan's motion to amend and denied Metro's motion to dismiss. (Docket No. 32.) In so doing, the court reminded Lanagan of her responsibility to adhere to the Federal Rules of Civil Procedure and the court's orders.[5] The instant motion followed soon thereafter.

///

///

---

[5] Metro later sought reconsideration of the court's order denying its motion to dismiss, asserting that Lanagan still had not provided her initial disclosures or responded to written discovery. (Docket No. 49.) The court declined to take any action on this request because Metro failed to first seek the court's leave, as required by this court's local rules. *See* N.D. Cal. Civ. R. 7-9.

4

**DISCUSSION**

Lanagan's FAC does not state under what authority she brings her action, nor does it speak to events that took place during her second period of employment. Nonetheless, the FAC can be most fairly interpreted to include claims under Title VII and the FEHA. Furthermore, in her deposition, Lanagan suggested that the second period of employment was also at issue in her lawsuit. (Lanagan Dep. 59:18–20, 62:10–13.) Thus, in an abundance of caution, the court will consider both periods of employment for both potential federal and state claims.

**A.     Title VII Claims**

Metro argues that Lanagan's Title VII claims are all time-barred. First, for her first period of employment, Metro asserts that Lanagan failed to file her EEOC charge within 180 days of her termination as required by statute. Second, for both periods of employment, it says that she filed her lawsuit more than ninety days after she received the EEOC's right-to-sue notice. (Mot. 1.) Lanagan's opposition does not attempt to rebut these assertions; instead, it primarily provides yet another recounting of her failed driving tests. (Opp'n 1–35.)

Title VII makes it unlawful for an employer to discriminate on the basis of sex or to retaliate against an employee for participating in protected activities. 42 U.S.C. § 2000e-3(a). Under Title VII, a person has 180 days to file a complaint with the EEOC, which may be extended to 300 days if the complainant first files her charge with an authorized state agency. § 2000e-5(e)(1). Filing a complaint within this time period is not a jurisdictional requirement, but the time limit does act like a statute of limitations. *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393 (1982).

In addition, once a party receives notice from the EEOC of her right to sue, she has ninety days to file a civil action. § 2000e-5(f)(1). This ninety-day period also acts as a statute of limitations; if a party fails to file suit within this time period, "the action is time-barred." *Payan v. Aramark Mgmt. Servs. Ltd.*, 495 F.3d 1119, 1121 (9th Cir. 2007).

Lanagan's first period of employment ended on September 26, 2006 (Wernock Decl. Ex. N), but she did not file a charge with the EEOC until April 24, 2008 (Warnock Decl. Ex. V, at 4–5). Her filing was well beyond 180 days—or even 300 days—from the end of her first period of employment. At deposition, Lanagan testified that she did not file a charge earlier because she

wanted to return to Metro's employ. (Lanagan Dep. 99:16–25.) She confirmed her reasoning at the motion hearing. Nonetheless, this reason is insufficient to trigger any equitable tolling, and Lanagan provides no other basis for her failure to make a timely charge concerning her first period of employment.

Although Lanagan did file her charge within 180 days of her *second* period of employment, this does not restart the clock for her first period. "[D]iscrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002). Metro's alleged acts of discrimination during Lanagan's 2006 driving tests are separate from its act of terminating her on account of two, unrelated incidents in 2007. There is also a nearly year-long gap between Lanagan's first and second periods of employment. Thus, because Lanagan failed to file a charge within 180 days of when the allegedly discriminatory acts occurred during her first period of employment, she has "los[t] the ability to recover" for those acts. *Id.* at 109; *see also United Air Lines, Inc. v. Evans*, 431 U.S. 553, 558 (1977) (noting that a discriminatory act that is not timely charged "is merely an unfortunate event in history which has no present legal consequences").

Moreover, despite the fact that Lanagan timely filed her EEOC charge for her second period of employment, her Title VII claims are still time-barred because she failed to file the instant lawsuit within ninety days of receiving her right-to-sue notice. *See Payan*, 495 F.3d at 1121. This ninety-day period is measured "from the date on which a right-to-sue notice letter arrived at the claimant's address of record." *Id.* at 1122. If this date is unknown, there is a presumption that the "letter issuance date is also the date on which the letter was mailed" and there is also a rebuttable presumption that the plaintiff received the letter within three days of mailing. *Id.* at 1123, 1126.

Lanagan's EEOC right-to-sue letter is dated June 3, 2008. (Warnock Decl. Ex. W.) She has presented no evidence rebutting the three-day presumption, and she even admitted at her deposition that she received the letter soon after the EEOC mailed it.[6] (Lanagan Dep. 173:4–174:10.) Yet Lanagan did not file suit until April 28, 2009—nearly ten months later. At the motion hearing, she

---

[6] Metro filed the deposition excerpts involving Lanagan's receipt of the right-to-sue notice as part of a "Supplemental Memorandum" for which this court did not grant defendant permission to file. (Docket No. 53.) However, as the court has considered Lanagan's untimely opposition, in fairness, it will also consider defendant's unauthorized filing.

6

represented that the delay was because she tried unsuccessfully to find representation. Nonetheless, as the EEOC warned her in its right-to-sue notice, such attempts do not toll the ninety-day deadline. As a result, defendant has met its initial burden of showing that there is no genuine dispute that Lanagan's Title VII claims are time-barred for both periods of employment. Lanagan has submitted no evidence to create a genuine issue, and thus, the court grants Metro's motion as to her Title VII claims.

**B.      FEHA Claims**

Metro asserts that Lanagan's FEHA claims concerning her first period of employment are also time-barred because she did not file an administrative charge within one year of the allegedly wrongful acts. Metro then argues that Lanagan has failed to establish a prima facie case of retaliation for her second period of employment—but that even if she had, it fired her in 2007 for performance reasons and Lanagan has offered no evidence that its explanation was pretextual. (Mot. 1.)

Just like federal law, California prohibits employers from discriminating based on sex and from retaliating against a person for taking part in protected activities such as filing a discrimination complaint or opposing discriminatory practices. Cal. Civ. Code § 12940(a), (h). However, "[n]o complaint may be filed after the expiration of one year from the date upon which the alleged unlawful practice" occurred. § 12960(d).[7] "The timely filing of an administrative complaint is a prerequisite to the bringing of a civil action for damages under FEHA." *Romano v. Rockwell Int'l, Inc.*, 926 P.2d 1114, 1121 (Cal. 2002).

As noted above, Lanagan's first period of employment ended on September 26, 2006 when she failed her fourth driving test. (Warnock Decl. Ex. L–N.) Any discriminatory employment practices for this period necessarily occurred by that date. *See id.* at 1122 (holding that "the limitations period applicable to administrative claims begins to run 'after' the unlawful employment practice has 'occurred' "). Yet Lanagan did not file her discrimination complaint until April 24,

///

///

---

[7] There are a few exceptions to this one-year rule, but none apply under the facts of this case.

1    2008,[8] more than one year later. Just as with her Title VII claim, Lanagan presents no basis for
2    equitable tolling. Consequently, Metro has shown that there is no genuine dispute that Lanagan's
3    FEHA claims are time-barred for her first period of employment, and Lanagan has not presented any
4    evidence to defeat Metro's motion for this period of time.

5    On the other hand, Lanagan's April 24, 2008 filing was within one year of when she was
6    terminated from her second period of employment in November 2007. She also filed her lawsuit
7    within one year of receiving the EEOC's right-to-sue notice in June 2008. Thus, her FEHA claims
8    are not time-barred for her second period of employment.

9    However, Lanagan has not articulated the basis for her FEHA claims with reference to the
10   second period of employment. Her court filings do not say, and in deposition she testified that it
11   was *not* discrimination.[9] Reading between the lines of her deposition testimony, coupled with what
12   she said in her opposition to his motion, the court presumed that she was claiming retaliation. But at
13   the motion hearing, she retreated even from this claim, instead asserting that her termination was
14   "unfair" and the result of "favoritism." It appears, then, that Lanagan has made no colorable FEHA
15   claim for her second period of employment.

16   Yet even if Lanagan had done so, the predicate to a potentially viable retaliation claim is that
17   she engaged in some protected activity. *Yanowitz v. L'Oreal USA, Inc.*, 116 P.3d 1123, 1130 (Cal.
18   2005). Had she? She did not file her EEOC complaint until *after* the second period of employment
19   ended, so that filing could not be the protected activity at issue. She claims that she had reported
20   another driver's alleged accident to Metro, but such a report is not protected activity because it has
21   nothing to do with the FEHA's prohibitions. (*Id.* at 62:10–65:15; *see also* Opp'n 36–38.)

22   Furthermore, assuming Lanagan could establish a prima facie case of retaliation, Metro has
23   articulated a legitimate, nondiscriminatory reason for terminating her and she has failed to show that

---

[8] Lanagan filed her complaint with the EEOC; the EEOC forwarded it to the DFEH. (Warnock Decl. Ex. V.)

[9] At deposition, Lanagan was specifically asked whether she was claiming discrimination during her second period of employment. At first, she said that she took "the Fifth on that one"; when asked what she meant, she replied, "That means I—because I have my feelings about that." (Lanagan Dep. 44:19–25.) Then, when asked a second time whether she was claiming that she was fired because of discrimination, she said, "No. I think it was mismanagement, and they didn't follow protocol." (*Id.* at 45:8–13.)

8

its reason was pretextual. *See Yanowitz*, 116 P.3d at 1130 (explaining the burden-shifting analysis for retaliation claims). Metro says that her termination was based on her performance—specifically, the two accidents within a few days of each other. (Aguirre Decl. ¶ 18.) At the motion hearing, Lanagan acknowledged that Metro told her it had fired her for performance reasons. Yet she claims that this was unfair because other drivers allegedly were involved in accidents and were not fired— though she conceded that none of those drivers allegedly had been involved in two accidents within such a short period of time, as she had been.[10]

Therefore, Metro has met its initial burden for summary judgment by showing that Lanagan does not have enough evidence of a FEHA claim concerning her second period of employment to meet her ultimate burden of persuasion at trial. *See Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000). Lanagan has again failed to introduce any evidence for which a reasonable trier of fact could find in her favor. Accordingly, the court also grants Metro's motion as to her FEHA claims.

## CONCLUSION

Based on the foregoing, the court GRANTS defendant's motion for summary judgment. Judgment will be entered in favor of defendant.

**IT IS SO ORDERED.**

Dated: May 4, 2010

_____
HOWARD R. LLOYD
UNITED STATES MAGISTRATE JUDGE

---

[10] At the hearing, Metro objected to Lanagan's allegations of other drivers' accidents, asserting that no evidence of other accidents was in the record before the court. The court sustains Metro's objection, but refers to Lanagan's allegations insofar as it further demonstrates her failure to assert a FEHA claim.

**C09-01835 HRL Notice will be electronically mailed to:**

Donald Douglas Shureen    doug.shureen@mcmillanshureen.com, sonja.gray@mcmillanshureen.com

**Notice will be sent by other means to:**

Dorothy Lanagan
631 Bronte Avenue
Watsonville, CA 95076

**Counsel are responsible for distributing copies of this document to co-counsel who have not registered for e-filing under the court's CM/ECF program.**